**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DAVID A. BUXTON, and,** | ) | |
| **ANNETTE BUXTON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CV-07-484-ID-TFM** |
| | ) | |
| **MARK WYATT, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S MOTION TO REMAND, RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND MOTION FOR THE ASSESSMENT OF ATTORNEY FEES AND COSTS

COME NOW the Plaintiffs and pursuant to 28 U.S.C. §1447(c) move that the Court enter an Order remanding this action to the Circuit Court of Lowndes County, Alabama for lack of subject matter jurisdiction, and further entering an Order denying the Co-Employee Defendants' Motion to Dismiss and ordering the Defendants to pay the Plaintiffs' attorney fees and costs incurred as a result of the removal and as grounds therefor, show unto the Court as follows:

DEFENDANTS' REMOVAL

1.     David A. Buxton, together with his wife, Annette Buxton, are the Plaintiffs in a lawsuit against Co-employee Defendants, Mark Wyatt, George Vinson, Steve Phillips, Mike Evans, Deborah Downey, Wendell Landis, Keith Shirley, Victor Swift, Scott Aler, and Don Macon (hereinafter collectively referred to as "Co-Employee Defendants") and against ThyssenKrupp Elevator Corp. (hereinafter referred to as "ThyssenKrupp") in the Circuit Court of Lowndes County, Alabama.

2.     This lawsuit arises out of David A. Buxton's on-the-job injury on June 13, 2005.

3.      The Defendant, ThyssenKrupp, in its Notice of Removal and the Co-Employee Defendants, in their Motion to Dismiss by adopting ThyssenKrupp's Notice of Removal, assert that there is diversity jurisdiction because the Co-Employee Defendants were fraudulently joined on the basis that there is no possibility that the Plaintiffs can establish a cause of action against the Co-Employee Defendants.

<u>FACTS AND PARTIES</u>

4.      The Plaintiffs and the Co-Employee Defendants are residents of the state of Alabama. (Complaint ¶¶ 1-12; See, Affidavit of David A. Buxton ["Buxton Aff."] ¶¶ 1, 3-13).

5.      The Co-Employee Defendants do not dispute that they are residents of the state of Alabama. (ThyssenKrupp's Notice of Removal ¶ 16 and Exhibit "C").

6.      On or about the 13th day of June, 2005, David A. Buxton was employed by G.E. Plastics Corp. at its Burkville facility in the Finishing Department and was engaged as a chemical operator under the general superintendency of Don Macon. (<u>See</u>, Complaint ¶ 17 and, Buxton Affidavit ¶ 3, Exhibit "A").

7.      Mark Wyatt is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville Facility as a finishing operation specialist. Mark Wyatt, as a part of his job description, is "responsible for the leading and planning of activities for the operation to assure continuous safety and quality improvement." (<u>See</u>, Complaint ¶ 3 and, Buxton Affidavit ¶ 4, Exhibit "B").

8.      George Vinson is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville Facility as a finishing operation specialist. In accordance with George Vinson's job description he is "responsible for the leading and planning of activities for

the operation to assure continuous safety and quality improvement." (See, Complaint, ¶ 4 and, Buxton Affidavit ¶ 5, Exhibit "B").

9.    Steve Phillips is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville Facility as a finishing operation day coordinator. (See, Complaint ¶ 5 and, Buxton Affidavit ¶ 5, Exhibit "B").

10.    Mike Evans is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville Facility as an engineer. As a part of Mike Evans' job responsibilities he "is responsible for directing the activities of the finishing operation to drive continuous improvement in the areas of safety/environmental, quality and productivity in a cost effective manner." More specifically, Mike Evans is responsible for "ensuring safety inspections are completed in a timely manner and outstanding items are resolved." (See, Complaint ¶ 6 and, Buxton Affidavit ¶ 7, Exhibit "C").

11.    Deborah Downey is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville Facility as the finishing plant manager. As a part of Deborah Downey's job responsibilities she "is responsible for directing the activities of the finishing operation to drive continuous improvement in the areas of safety/environmental, quality and productivity in a cost effective manner." More specifically, Deborah Downey is responsible for "ensuring safety inspections are completed in a timely manner and outstanding items are resolved." (See, Complaint ¶ 7 and, Buxton Affidavit ¶ 8, Exhibit "C").

12.    Wendell Landis was a resident of the state of Alabama at the time of the incident set out in my Complaint and at such time was the environmental health and safety engineer at G.E. Plastics Corp's Burkville Facility. Wendell Landis was responsible for safety at the G.E. Plastics facility. Exhibits "D-1" and "D-2" to Buxton's Affidavit set out the safety

responsibilities of Wendell Landis as well as other G.E. Plastics management and engineer employees. (<u>See</u>, Complaint ¶ 8 and, Buxton Affidavit ¶ 9, Exhibits "D-1" and "D-2").

13.    Keith Shirley is a resident of the state of Alabama and is employed by G.E. Plastics Corp at its Burkville facility as a chemical operations environmental health and safety specialist. (<u>See</u>,  Complaint ¶ 9, Buxton Affidavit ¶ 10, Exhibits "D-1", "D-2" and "E").

14.    Victor Swift is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville facility as a finishing plant environmental and health safety specialist. Victor Swift is responsible for safety in the Finishing Department. (<u>See</u>, Complaint ¶10 and, Buxton Affidavit ¶ 11, Exhibits "D-1", "D-2" and "E").

15.    Scot Aler is a resident of the state of Alabama and was employed by G.E. Plastics Corp. at its Burkville facility as an environmental health and safety manager. Scot Aler was responsible for safety in the Finishing Department. (<u>See</u>, Complaint ¶ 11 and, Buxton Affidavit ¶ 12, Exhibits "D-1", "D-2" and "E").

16.    Don Macon is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville facility as the finishing plant building coordinator. Don Macon's job description specifically provides for responsibilities related to safety. (<u>See</u>, Complaint ¶ 12 and, Buxton Affidavit ¶ 13, Exhibit "F").

17.    G.E. Plastics, at its Burkville facility, has a preventive maintenance policy, that in accordance with management's responsibility for safety guidelines, the said policy is to be implemented by its management employees, who include all of the Co-Employee Defendants in this action. (<u>See</u>, Buxton Affidavit ¶ 14, Exhibit "G").

18.    As a part of G.E.'s preventive maintenance program, G.E. has a freight elevator monthly inspection worksheet. (<u>See</u>, Buxton Affidavit ¶ 15, Exhibits "H").

19.    All of the Co-Employee Defendants are responsible for implementing the preventive maintenance program, including the monthly inspection of the freight elevator in the Finishing Plant. (See, Buxton Affidavit ¶ 16).

20.    Immediately after David A. Buxton's injury at the G.E. Plastics facility on June 13, 2005, the Co-Employee Defendants, Wendell Landis, Scott Aler, Vic Swift, Mark Wyatt, Mike Evans, George Vinson, and Don Macon, in accordance with G.E. Plastics' safety policy formed the investigation team. (See, Buxton Affidavit ¶17, Exhibit "I").

21.    Although G.E. Plastics required, as a part of its preventive maintenance program, a monthly inspection of the freight elevator by the G.E. management employees, the investigation team that included the Co-Employee Defendants as set out in the preceding paragraph, determined that "there was no routine PM or inspection on this elevator safety device (safety edge)." (See, Complaint ¶ 24, Buxton Affidavit ¶ 18, Exhibits "I" and "J").

22.    The investigation team determined that the wiring in the Finishing Plant freight elevator was loose causing the safety gate/safety edge to not function. (See, Complaint ¶ 28 and, Buxton Affidavit ¶ 19, Exhibit "J").

23.    The investigation team further determined that the safety gate/safety edge would have problems functioning in the harsh environment at the G.E. Plastics facility. (See, Buxton Affidavit ¶ 19, Exhibit "J").

24.    The Co-Employee Defendants knew that the Finishing Plant elevator's safety devices – the safety gate/safety edge – were not functioning properly prior to David A. Buxton's injury as a result of the malfunctioning safety devices on June 13, 2005. (See, Complaint ¶¶ 21, 22 and 26 and, Buxton Affidavit ¶ 20, Exhibits "I" and "J").

25.     According to the Co-Employee Defendants' job descriptions and G.E. Plastics' policies related to safety and preventive maintenance, it was the Co-Employee Defendants' responsibility to ensure that any malfunctioning safety devices on the Finishing Plant elevator were repaired and/or replaced to ensure safe operation of the Finishing Plant elevator. (<u>See</u>, Complaint ¶¶ 3-12, 23, 25 and 26, and Buxton Affidavit ¶¶ 4-16, Exhibits "B" – "H").

26.     The investigation team members' investigative report and emails show that the safety devices on the Finishing Plant elevator were not functioning and were in need of repair and/or replacement. (<u>See</u>, Complaint ¶¶ 21, 28-29 and, Buxton Affidavit ¶ 22, Exhibits "I" and "J").

27.     The Co-employees allowed a known safety hazard to exist, in that they knew the wiring or safety gate/safety edge of the Finishing Plant elevator was defective. (<u>See</u>, Complaint ¶¶ 21, 25-26, 28-29 and Buxton Affidavit ¶ 23).

28.     The Co-Employee Defendants knew that the safety devices on the Finishing Plant elevator were susceptible to malfunctioning because of the harsh environment at the G.E. Plastics facility. (<u>See</u>, Complaint ¶ 25 and, Buxton Affidavit ¶ 24, Exhibits "I" and "J").

29.     The Co-Employee Defendants knew that routine preventive maintenance or inspections were required in order to prevent malfunctions in the Finishing Plant elevator safety devices and yet knowing that such routine preventive maintenance or inspections were necessary, they failed to conduct the same as shown by their investigative report and emails. (<u>See</u>, Complaint ¶ 26 and, Buxton Affidavit ¶25, Exhibits "G", "H", "I" and "J").

30.     In order for David A. Buxton to perform his job duties, it was necessary for him to use the Finishing Plant elevator on a regular basis. (<u>See</u>, Complaint ¶27 and Buxton Affidavit ¶26).

PLAINTIFFS' CAUSE OF ACTION AGAINST THE CO-EMPLOYEE DEFENDANTS

31.     Under Ala. Code §25-5-11(c)(2) an employee can maintain an action against co-employees for willfully and intentionally removing a safety device by showing that the co-employees failed to properly maintain the safety device and/or repair or replace the safety device. See, Moore v. Reeves, 589 So.2d 173 (Ala. 1991).

32.     In Moore v. Reeves the Alabama Supreme Court, in construing the terms "device" "guard" and "safety" within the meaning of Ala. Code §25-5-11(c)(2) held that a "safety device or safety guard is that which is provided, principally, but not exclusively, as protection to an employee, which provides some shield between the employee and danger so as to prevent the employee from incurring injury while he is engaged in the performance of the service required of him by the employer; it is not something that is a component part of the machine whose principle purpose is to facilitate or expedite the work." Id. at p. 177.

33.     In the instant case, the safety gate/safety edge on the Finishing Plant elevator constituted a shield between David A. Buxton and danger so as to protect him from the injuries he sustained while he was using the freight elevator in the performance of his duties as an employee of G.E. Plastics.

34.     The Court in Moore v. Reeves went on to hold that "the failure to maintain and/or repair a safety guard or device provided by the manufacturer of a particular machine would be tantamount to the 'removal of' or the 'failure to install' a safety guard or device. To hold otherwise would allow supervisory employees to neglect the maintenance and repair of safety equipment provided to protect co-employees from injury, which by its very nature, is a clear violation of public policy." Id. at pp. 178-179.

7

35.    The Co-Employee Defendants' assertions in their respective affidavits that they had no responsibility concerning the safety of or the operation/maintenance of the freight elevator, is at best disingenuous in light of the fact that their respective job descriptions and G.E. Plastics' policies specifically place such a responsibility on each of such Co-Employees. (See, Buxton Affidavit ¶¶ 3-15, Exhibits "B" – "H").

36.    The Co-Employee Defendants' assertions are nothing more than an attempt to shirk their safety responsibilities. The Alabama Supreme Court in Moore v. Reeves found such an argument to be a violation of public policy. Id. at pp. 178-179.

37.    The Plaintiffs have submitted sufficient and substantial evidence that shows that the Co-Employee Defendants, who are all supervisory employees, neglected the maintenance and repair of the safety devices associated with the Finishing Plant freight elevator and as such the Plaintiffs have a cause of action against such Co-Employee Defendants under Ala. Code §25-5-11(c)(2).

## STANDARD OF REVIEW

38.    This Court in Jeter v. Orkin Exterminating Co., 84 F.Supp.2d 1334 (M.D. Ala. 2000) set out the remand standard as follows:

> It is well settled that a defendant, as the party removing an action to Federal Court, has the burden to establish federal jurisdiction. See, Diaz v. Shepherd, 85 F.3d 1502, 1505 (11th Cir. 1996). Removal statutes must be strictly construed because of the significant federalism concerns raised by removal jurisdiction. See, Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed.2d 1214 (1941); Seroyer v. Pfizer, Inc., 991 F.Supp. 1308, 1312 (M.D. Ala. 1997). Therefore, '[i]f at any time before final judgment it appears that the District Court lacks subject matter jurisdiction the case shall be remanded.' 28 U.S.C. §1447(c). 'All doubts [and uncertainties] about federal court jurisdiction must be resolved in favor of a remand to State Court.' Seroyer v. Pfizer, 991 F.Supp. at 1312 (citing Burns v. Windsor Insurance Co., 31 F.3d 1092, 1095 (11th Cir. 1994)." Id. 1335-1336.

8

39.    The Court when determining whether a defendant has been fraudulently joined must evaluate all factual issues and substantive law in favor of the plaintiff. <u>See</u>, <u>Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983) and <u>Jeter v. Orkin Exterminating Co.</u>, at 1337.

40.    The Court must make these determinations based on the plaintiff's pleadings at the time of removal and may also consider affidavits submitted by the parties. <u>Crowe v. Coleman</u>, 113 F.3d 1536, 1538 (11th Cir. 1997).

41.    Under Alabama law in order for the Plaintiffs to maintain a cause of action against the Co-Employee Defendants, the Plaintiffs must prove that the Co-Employee Defendants failed to properly maintain and/or repair the safety devices on the Finishing Plant freight elevator. <u>See</u>, <u>Moore v. Reeves</u>, <u>supra</u>.

42.    The Plaintiff, David A. Buxton's, affidavit and exhibits thereto establish that the Co-Employee Defendants had knowledge of the malfunctioning Finishing Plant freight elevator, that the Co-Employee Defendants had safety responsibilities and duties, and further had knowledge that by their failure to inspect and maintain the Finishing Plant freight elevator that such acts and/or omissions would likely or probably result in injury.

43.    The facts pled in the Plaintiffs' Complaint and as set out in Buxton's Affidavit clearly show that the Plaintiffs have stated a valid cause of action and that the joinder of the Co-Employee Defendants is legitimate.

44.    Moreover, for the Court to remand this action to the Circuit Court of Lowndes County, Alabama, it is not necessary for the Plaintiffs to have a winning case against the allegedly fraudulent Defendants but only have a possibility of stating a valid cause of action. <u>See</u>, <u>Triggs v. John Crump Toyota</u>, 154 F.3d 1284, 1287 (11th Cir. 1998). The Plaintiffs have

shown by the facts pled in their Complaint and in Buxton's Affidavit that they have stated a valid cause of action against the Co-Employee Defendants.

45.     The Court is under an obligation to favor the Plaintiffs' version of the facts and the Court cannot interpret disputed facts in favor of the Defendants. See, Bedford v. Connecticut Mutual Life Insurance Company, 916 F.Supp. 1211, 1215 (M.D. Ala. 1996). Thus, the Court must reject the facts asserted by the Co-Employee Defendants that are in conflict with the facts in the Complaint and Buxton's Affidavit.

46.     For the above reasons, it is clear that the Co-Employee Defendants have not been fraudulently joined and as result there is not complete diversity of citizenship and this action is due to be remanded to the Circuit Court of Lowndes County, Alabama.

## ASSESSMENT OF ATTORNEY FEES AND COSTS

47.     Pursuant to 28 U.S.C. §1447(c) attorney fees and costs may be awarded against a defendant because of an improper removal even though the defendant might have acted in good faith. See, Gray v. New York Life Insurance Co., 906 F.Supp. 628, 630 (M.D. Ala. 1995).

48.     The Plaintiffs submit that Buxton's Affidavit and the exhibits attached thereto show that the Defendants in this action failed to review the job descriptions of the Co-Employee Defendants, the safety policies and procedures of the Co-Employee Defendants' employer, and the Investigative Reports concerning the June 13, 2005 incident that injured the Plaintiff, David A. Buxton. A review of these documents by the Defendants would have shown that the Plaintiffs' allegations stated a valid cause of action against the Co-Employee Defendants.

49.     The Affidavits that the Defendant, ThyssenKrupp, has submitted from the Co-Employee Defendants are in fact in conflict with their job descriptions and the G.E. Plastics policies and procedures concerning safety.

50.     For the above reasons, the removal of this action by the Defendant, ThyssenKrupp, was improper and this Court, pursuant to 28 U.S.C. §1447(c), should assess attorney fees and costs against said Defendant and in favor of the Plaintiffs.

<u>RESPONSE TO MOTION TO DISMISS</u>

51.     In order for a court to dismiss a complaint for failure to state a claim under <u>Federal Rule of Civil Procedure</u> 12(b)(6), it must be clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. <u>Ishen v. King & Spaulding</u>, 467 U.S. 69, 104 S.Ct. 229, 81 L.Ed.2d 59 (1984).

52.     For all of the reasons stated herein, the Plaintiffs have shown that they have stated a claim against the Co-Employee Defendants.

53.     The Co-Employee Defendants' Motion to Dismiss is due to be denied.

WHEREFORE, the Plaintiffs pray that upon consideration of this Motion and Response, that this Court will enter an Order remanding this action to the Circuit Court of Lowndes County, Alabama, denying the Co-Employee Defendants' Motion to Dismiss and assessing attorney fees and costs against the Defendant, ThyssenKrupp.

RESPECTFULLY SUBMITTED on this the <u>28th</u> of June, 2007.

/s/ James B. McNeill, Jr.
James B. McNeill, Jr.  ASB-4517-I63J
Attorney for the Plaintiffs

OF COUNSEL:
Hobbs & Hain, P.C.
P.O. Box 1190
Selma, Alabama 36702-1190
(334) 874-6683
(334) 872-8435

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jere F. White, Jr. Esq.
Lee M. Hollis, Esq.
Hyde Carby, Esq.
Lightfoot, Franklin & White, LLC
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200

Charles A. Stewart, III, Esq.
Angela R. Rogers, Esq.
Bradley Arant Rose & White, LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: NONE.

DATED this the <u>28th</u> day of June, 2007.

  /s/ James B. McNeill, Jr.
James B. McNeill, Jr.  ASB-4517-I63J

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID A. BUXTON, and, | ) | |
| ANNETTE BUXTON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. CV-07-484-ID-TFM |
| | ) | |
| MARK WYATT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF DAVID A. BUXTON

STATE OF ALABAMA   )
                      :
COUNTY OF DALLAS   )

PERSONALLY APPEARED BEFORE ME, the undersigned authority, in and for said State and County, David A. Buxton, who being by me first duly sworn, states under oath the matters, facts, and things set forth herein are true and correct:

1.  My name is David A. Buxton. I am over nineteen years of age, a resident of the state of Alabama, and I am competent to make this statement based on my own personal knowledge.

2.  I, together with my wife, Annette Buxton, are the Plaintiffs in a lawsuit I filed against Co-employee Defendants, Mark Wyatt, George Vinson, Steve Phillips, Mike Evans, Deborah Downey, Wendell Landis, Keith Shirley, Victor Swift, Scott Aler, and Don Macon (hereinafter collectively referred to "Co-Employee Defendants") and against ThyssenKrupp Elevator Corp. ("ThyssenKrupp") in the Circuit Court of Lowndes County, Alabama.

EXHIBIT "1"

3.    On or about the 13th day of June, 2005, I was employed by G.E. Plastics Corp. at its Burkville facility in the Finishing Department as a chemical operator under the general superintendency of Don Macon. A copy of my job description is attached hereto as Exhibit "A".

4.    Mark Wyatt is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville Facility as a finishing operation specialist. A copy of the operation specialist job description is attached hereto as Exhibit "B". Mark Wyatt, as a part of his job description, is "responsible for the leading and planning of activities for the operation to assure continuous safety and quality improvement."

5.    George Vinson is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville Facility as a finishing operation specialist. A copy of George Vinson's job description is attached hereto as Exhibit "B". In accordance with George Vinson's job description he is "responsible for the leading and planning of activities for the operation to assure continuous safety and quality improvement."

6.    Steve Phillips is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville Facility as a finishing operation day coordinator. A copy of Steve Phillips' job description is attached hereto as Exhibit "F".

7.    Mike Evans is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville Facility as an engineer. A copy of Mike Evans' job description on June 13, 2005 is attached hereto as Exhibit "C". As a part of Mike Evans' job responsibilities he "is responsible for directing the activities of the finishing operation to drive continuous improvement in the areas of

safety/environmental, quality and productivity in a cost effective manner." More specifically, Mike Evans is responsible for "ensuring safety inspections are completed in a timely manner and outstanding items are resolved."

8.    Deborah Downey is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville Facility as the finishing plant manager. A copy of Deborah Downey's job description is attached hereto as Exhibit "C". As a part of Deborah Downey's job responsibilities she "is responsible for directing the activities of the finishing operation to drive continuous improvement in the areas of safety/environmental, quality and productivity in a cost effective manner." More specifically, Deborah Downey is responsible for "ensuring safety inspections are completed in a timely manner and outstanding items are resolved."

9.    Wendell Landis was a resident of the state of Alabama at the time of the incident set out in my Complaint and at such time was the environmental health and safety engineer at G.E. Plastics Corp's Burkville Facility. Wendell Landis was responsible for safety at the G.E. Plastics facility. Attached hereto as Exhibits "D-1" and "D-2", respectively, are G.E. Plastics Management's Commitment to Safety policy document and G.E. Plastics Responsibility for Safety document, respectively. Exhibits "D-1" "D-2" set out the safety responsibilities of Wendell Landis as well as other G.E. Plastics management and engineer employees.

10.    Keith Shirley is a resident of the state of Alabama and is employed by G.E. Plastics Corp at its Burkville facility as a chemical operations environmental health and safety specialist. In accordance with Exhibits "D-1" and "D-2", Keith Shirley is responsible for safety in the Finishing Department. Attached hereto as

Exhibit "E" is G.E. Plastics' flowchart showing Keith Shirley as having safety responsibilities.

11.    Victor Swift is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville facility as a finishing plant environmental and health safety specialist. In accordance with Exhibits "D-1" and "D-2", Victor Swift is responsible for safety in the Finishing Department. Attached hereto as Exhibit "E" is G.E. Plastics' flowchart showing Victor Swift as having safety responsibilities.

12.    Scot Aler is a resident of the state of Alabama and was employed by G.E. Plastics Corp. at its Burkville facility as an environmental health and safety manager. In accordance with Exhibits "D-1" and "D-2", Scot Aler was responsible for safety in the Finishing Department. Attached hereto as Exhibit "E" is G.E. Plastics' flowchart showing Scott Aler as having safety responsibilities.

13.    Don Macon is a resident of the state of Alabama and is employed by G.E. Plastics Corp. at its Burkville facility as the finishing plant building coordinator. Attached hereto as Exhibit "F" is the building coordinator job description. Don Macon's job description specifically provides for responsibilities related to safety.

14.    G.E. Plastics, at its Burkville facility, has a preventive maintenance policy that in accordance with its responsibility for safety guidelines is to be implemented by its management employees, who include all of the Co-Employee Defendants in this action. Attached hereto as Exhibit "G" is the Preventive Maintenance Program policy.

15.     As a part of G.E.'s preventive maintenance program, G.E. has a freight elevator monthly inspection worksheet. A copy of such worksheet is attached hereto as Exhibit "H".

16.     All of the Co-Employee Defendants are responsible for implementing the preventive maintenance program, including the monthly inspection of the freight elevator in the Finishing Plant.

17.     Immediately after my injury at the G.E. Plastics facility on June 13, 2005, the Co-Employee Defendants, Wendell Landis, Scott Aler, Vic Swift, Mark Wyatt, Mike Evans, George Vinson, and Don Macon, in accordance with G.E. Plastics' safety policy formed the investigation team with other G.E. Plastics' employees.

18.     Although G.E. Plastics required, as a part of its preventive maintenance program, a monthly inspection of the freight elevator by the G.E. management employees, the investigation team that included the Co-Employee Defendants as set out in the preceding paragraph, determined that "there was no routine PM or inspection on this elevator safety device (safety edge)." A copy of the Investigation Report is attached hereto as Exhibit "I".

19.     The investigation team, which included the employees identified in paragraph 17 above, determined that the wiring to the Finishing Plant elevator was loose causing the safety gate/safety edge to not function. Further, it was determined by the investigation team that the safety gate/safety edge would have problems functioning in the harsh environment at the G.E. Plastics facility. Attached hereto as Exhibit "J" is a June 14, 2005 email concerning the investigative team's findings.

20.     The Co-Employee Defendants knew that the Finishing Plant elevator's safety devices – the safety gate/safety edge – were not functioning properly prior to my injury as a result of the malfunctioning safety devices on June 13, 2005. See, Exhibits "I" and "J".

21.     According to the Co-Employee Defendants' job descriptions and G.E. Plastics' policies related to safety and preventive maintenance, it was the Co-Employee Defendants' responsibility to ensure that any malfunctioning safety devices on the Finishing Plant elevator were repaired and/or replaced to ensure safe operation of the Finishing Plant elevator. See, Exhibits "B" thru "H".

22.     The investigation team members' investigative report and emails show that the safety devices on the Finishing Plant elevator were not functioning and were in need of repair and/or replacement. See, Exhibits "I" and "J".

23.     The Co-employees allowed a known safety hazard to exist, in that they knew the wiring or safety gate/safety edge of the Finishing Plant elevator was defective.

24.     The Co-Employee Defendants knew that the safety devices on the Finishing Plant elevator were susceptible to malfunctioning because of the harsh environment at the G.E. Plastics facility. See, Exhibits "I" and "J".

25.     The Co-Employee Defendants knew that routine preventive maintenance or inspections were required in order to prevent malfunctions in the Finishing Plant elevator safety devices and yet knowing that such routine preventive maintenance or inspections were necessary, they failed to conduct the same as shown by their investigative report and emails. See, Exhibits "G", "H", "I" and "J".

26.    In order for me to perform my job duties at G.E. Plastics, it was necessary for me to use the Finishing Plant elevator on a regular basis.

27.    Further affiant saith not.

_David A. Buxton_

David A. Buxton

SWORN TO AND SUBSCRIBED BEFORE ME on this the 28th day of June, 2007.



_Elizabeth R Champion_
Notary Public
State of Alabama at Large
My Commission Expires: 5/5/11

7

# Packaging MTS Job Description



**Revision #: 3 Document ID: 15672 Old System number: N/A**
**Job Overview**
The MTS Operator is responsible for performing all flex hose and transition hose hooks ups in the pack tower. The operator is required to make good decisions on line placements and coordination of bag/box production runs. The requirements are the knowledge of color coordination, computer setpoints, roof blowers, knockout tanks, roto conveyors, rotary valves, segregation of recycle, and control plans.

**Job Responsibilities**
**Quality:**
- Sample Checks on Package Bins, Box/Bag Drop Legs, South Dock
- Inspect Flex Hoses, Package Bins, And Transition Hoses For Contamination or damage
- Contribute To Quality Management System
- Segregate Non Conformance Material
- Monitor And Implement Control Plans
- Blend Material

**Productivity:**
- Start Up And Shutdown of Dust Collectors
- Dump pellet Dust Collectors ~~(assist Pkg Field Tech)~~
- Communicate With V-bin And Bag/Box Operators
- Clean Bag/Box Drop Legs
- Clean SD Lines, Roto conveyors, Pellet Tankers, and Package Bins~~, And Railcars~~
- Clean Package Bin Transition Pieces
- Determine MTS Line Placement
- Comprehend Status Sheet
- Knowledge of Extruder Rates
- Connection Of Package Bines to Bag / Box Lines
- Use Of MTS Return Line
- Connect Lines To Knock Out Tanks
- BPS1, BPS2 Operational Sequences
- Manual And Automatic Pellet Transfers
- Load Pellet Tankers at South Dock ~~And Railcars (assist Pkg Field Tech)~~
- Communicate With Spotters
- Update DCS When Necessary
- Knowledge of Roto Conveyors, Rotary Valves, And Screeners

**General:**
- Communicate recycle info to melt flow tech and BC
- Document equipment issues in EMPAC system
- Site Wide Goals
- Maintain high standard of area housekeeping
- Help In Following Area: MTS Bag Lines, Box Lines, Staging, Bulk Loading, Pkg Field Tech duties

---

**This is GE Confidential Document. A Printed copy is UNCONTROLLED, current only for the date or the task it is printed and should not be copied.**

# A and B Bag Line Operator Job Description

**Revision #: 2 Document ID: 15673 Old System number: N/A**
**Job Overview**
The "A" and "B" bag line operators are responsible for the packaging of pellets into 25KG and 55 lb. bags. The System requires knowledge of the Bemis Bagger and/or FFS Bagger, Master Conveyor palletizer, PLC and stretch wrap units, and a Bemis heat Sealer. The operator is responsible for meeting established safety, quality, housekeeping, and environmental standards.

**Job Responsibilities**
**Quality:**
- **Adjust And Zero Bemis Scales**
- **Monitor Scale Weights And Bag Filling**
- **Inspect Bags When Filling Bag Magazine**
- **Monitor PWRS**
- **Check For Correct Grade / Color/ Lot #**
- **Sample For VIR and UV, as applicable**
- **Inspect For Contamination**
- **Segregate Non Conformance Material**
- **Fill Out Product Non Conformance Reports**
- **Contribute To ~~ISO 9000~~ Quality Management System**

**Productivity:**
- **Set Up Bemis Scales**
- **Troubleshoot Bemis Scales Programs**
- **Set Up Bemis Bagger**
- **Set Up Mathews Jet A Mark Printer**
- **Set Up Master Conveyor Stretch Wrapping unit**
- **Operational Sequences of Bag Line**
- **Set Up Bemis Heat Sealer and clean once per shift**
- **Communicate With V-bin And MTS Operators**
- **Washing And Cleaning Of Bagger**
- **Set Up FFS Bagger**
- **Operate and Troubleshoot FFS Bagger**

**General:**
- **~~Record Daily Recycle Numbers~~ Communicate Recycle Information to melt flow tech and BC**
- **Document equipment issues in EMPAC system ~~Information In Packaging And Maintenance Log Books~~**
- **Pellet Recovery System**
- **Site Wide Goals**
- **Maintain high standard of area housekeeping**
- **Help In Following Area: MTS Bag Lines, Box Lines, Staging, Bulk Loading, Pkg Field Tech duties**

**Physical / Mental Requirements:**
- **Understand DCS System /PLC/ VAX / Bonis OIT**
- **Occasional Lifting And Carrying 55 Lbs. / Flex Hoses**
- **Work In Wet And Humid Conditions**

- **Ability To Reason And Make Judgments**
- **Present Information Or Ideas Clearly**
- **Ability To Perform Basic Arithmetic Quickly And Accurately**
- **Ability To Make Visual Comparisons**
- **Walk Up And Down Stairways**
- **Operate A Fork Truck**
- **Thread Stretch Wrapping Unit**
- **Occasional Lifting of stretch wrap refill rolls**

This is GE Confidential Document. A Printed copy is UNCONTROLLED, current only for the date or the task it is printed and should not be copied.

# A and B Box Line Operator Job Description

**Revision #: 1 Document ID: 27063 Old System number: NEW**

**Job Overview**

The "A" and "B" box line operators are responsible for the packaging of pellets into 1,100 lb. Gaylords, 1100 lb, or 2200 lb. supersacks. The system requires the knowledge of the Master Conveyor Pallet line sequencing, Zebra Barcode Labelers, license plate labelers, Box Erector, Liner Inserter, Bag Tie-er, and Lid Placer ~~Cyclop Strappers~~ .

**Job Responsibilities**

**Quality:**

- ~~Monitor PWRS (auto downloading only)~~
- Check For Correct Grade / Color / Lot #
- Sample for VIR and/or UV
- Inspect for contamination
- Segregate Non Conformance Material
- Fill Out Product Non Conformance Reports
- Contribute To ~~ISO 9000~~ Quality Management System
- Inspect Pallet
- Inspect Gaylord
- Align Gaylord Straight On pallet

**Productivity:**

- Set Up ~~zebra~~ Barcode Labeler
- Set Up license plate labeler
- Set Up Box Line Scale Filling Setpoints
- Understand Sequence Of Master Conveyor Pallet Conveying System
- ~~Set Up Cyclop Strappers~~

- Wash And Clean Box Drop Leg and pre-weigh hopper
- Set Up Liner Tie-er Lid Placer
- Set Up and Troubleshoot Box Erector, Liner Inserter, and LTLP

- General:
- ~~Record Daily Recycle Numbers~~ Communicate Recycle Information to Melt Flow Tech
- Document ~~Information In Packaging And Maintenance Log Books~~ equipment issues in EMPAC system
- Site Wide Goals
- Maintain High standard of area housekeeping
- Help In Following Areas:
    V-bins, MTS, Staging, Bulk Loading, and Bag Lines, Pkg Field tech duties.

This is GE Confidential Document. A Printed copy is UNCONTROLLED, current only for the date or the task it is printed and should not be copied.

## Packaging Bulk Loading Operator Job Description

**Revision #: 2 Document ID: 15671 Old System number: N/A**

**Job Overview**

**The bulk loading operator is responsible for loading powder bag and bulk containers. The job requires the operator to have a good understanding of the DCS, Bemis bagger, Fischbein sewing machine, Matthews printers, Doboy sewing machine, and telescoping conveyors. The operator will interact with truck spotters and scheduling on powder lots and the availability of containers for shipments.**

**Job Responsibilities**

**Quality:**

- **Monitor Powder Bag and Bulk Weights**
- **Inspect Powder Bags For Correct Grade / Color / Lot #**
- **Inspect Railcars And Pellet Tankers (assist Pkg Field Tech.)**
- **Monitor Toledo Check Weigher**
- **Contribute to ~~ISO 9000~~ Quality Management System**
- ~~**Fill Out Non Conformance Reports**~~
- **Sample Pellet Tankers, Railcars (assist Pkg Field Tech), Bag / Load Bins**

**Productivity:**

- **Seal Tankers And Fill Out Paperwork**
- ~~**Obtain Load Tickets From Spotters**~~
- **Prepare / Check / Distribute Documentation**
- **Fill Out Manual Poundage Cards when needed**
- **Enter Information Into Bonis System**
- **Operation Powder Dust Collection System**
- **Operation of Bulk Cannon System**
- **Operation of Bagging System**
- **Operation of Railcar Loading (assist Pkg Field Tech.)**
- **Operation of Pellet Tanker Loading (assist Pkg Field Tech.)**
- **Read Powder Lot Sheet And Priorities Orders**
- **Operate Bemis Scales**
- **Operate Bemis Bagger**
- **Install Bulk Powder Liners**
- ~~**Cut Wood With Miter Saw**~~
- **Communicate With Spotters & Guard House**

**General:**

- ~~**Document Information In packaging And Maintenance Log Books**~~
- **Document equipment issues in Empac system**
- **Site Wide Goals**
- **Maintain high standard of area housekeeping**
- **Help In Following Area: MTS Bag Lines, Box Lines, Staging, Bulk Loading, Pkg Field Tech duties**

**This is GE Confidential Document. A Printed copy is UNCONTROLLED, current only for the date or the task it is printed and should not be copied.**

# Packaging Field Tech Responsibilities

**Revision #: 2 Document ID: 24084 Old System number: N/A**

**Job Overview**

The Packaging Field Tech is primarily responsible for staging supplies and stocking supplies for pallet dispensers, baggers, box erector, liner inserter, bag tie-er, and lid placer. The Pkg Field Tech should also be primarily responsible for troubleshooting and clearing issues with the box erector, liner inserter, bag tie-er, lid placer, and packaging transfer dust collection system (including dumping PDC1 and PDC2 once per shift ). They should assist the operators assigned to the different packaging areas and perform any task or job duty needed in the V-bin, MTS, Bulk Loading, Stager, and A/B Bag/Box areas.  The pkg field tech will help with or perform v-bin washes, package bin washes, load bag/bulk powder trucks, load tankers, load railcars and perform any task necessary to aid in the production of the department.  The pkg field tech will store used vendor pallets from box erector boxes in lanes FA & FB 33 – 35, used LTLP vendor pallets in lanes FF 28 & 29, and scrap pallets in lanes FF  30 -32 per Doc ID 311 <u>Warehouse Storage Guidelines</u>.  The pkg field tech will, on a timely and routine basis, check with the Building Coordinator and other operators and monitor the radio and DCS graphics to determine where he/she can be of the most help.  The Building Coordinator will sometimes assign the field tech responsibilities for the shift or rotation which could change as the priorities of the shift change.

This is GE Confidential Document. A Printed copy is UNCONTROLLED, current only for the date or the task it is printed and should not be copied.

# Packaging Stager Job Description

**Revision #: 1 Document ID: 27487 Old System number: N/A**
**Job Overview**
The Stager is responsible for removing packaged pellets from the production line conveyors. It is the responsibility of the stager to ensure that all pallets are scanned properly before sending product to gate 9. The stager is required to use Bonis and a Vax terminal to expedite shipping and track material from finishing to gate 9.

**Job Responsibilities**
**Quality:**
- Monitor production on A and B bag and box lines
- Check For Correct Pallet/Grade / Color / Lot #
- Segregate Non Conformance Material
- ~~Fill Out Product Non Conformance Reports~~
- Contribute To ~~ISO 9000~~ Quality Management System
- Inspect Pallet

**Productivity:**
- Use scanner and RF locator
- Stage material in lanes and/or trailers
- Stock production supplies regularly (assist Pkg Field Tech)
- Fill propane tanks
- Use Stage log sheet

**General:**
- ~~Record Daily Recycle Numbers~~ Communicate Recycle Information to melt flow tech and BC
- Document ~~Information In Maintenance Log Books~~ equipment issues in EMPAC system
- Maintain high standard of area housekeeping

---

This is GE Confidential Document. A Printed copy is UNCONTROLLED, current only for the date or the task it is printed and should not be copied.

# Packaging VBin Operator Job Description

**Revision #: 1 Document ID: 27488 Old System number: N/A**
**Job Overview**
The V-Bin operator is responsible of sampling material in the v-bins and transferring good product to the packaging bins to be packaged out as finished goods.

**Job Responsibilities**
**Quality:**
- Sample V-bins
- Perform VIR
- Pull Color Check samples, if needed
- Perform Chaff Washes
- Monitor Control plans
- Segregate Recycle
- Inspect Roto Conveyors, V-bins, Transfer Lines, And Sampling Tubes
- Monitor Transfer Rates
- Contribute To ~~ISO 9000~~ Quality Management System
- ~~Fill Out Non Conformance Reports~~

**Productivity:**
- Notify ~~Color Control~~ Pkg Field tech When Pellet Dust Collectors Need Emptying
- Communicate With Extrusion And Color
- Transfer V-bins By Dilute Transfer Or Roto Conveyors
- Transfer Non Conforming Material
- Segregate Off Spec And Keep Separate Material
- Transfer V-bin to BPS1, BPS2
- Communicate Line Status To MTS, Bag / Box, And Bulk Loading Operators
- Wash V-bins, Roto Conveyors, And Transfer Lines

**General:**

- ~~Enter Recycle Information Into Recycle Data Base~~ Communicate recycle to melt flow tech and BC
- Document  equipment issues in EMPAC system ~~Information In Packaging And Maintenance Log Books~~
- Weigh Up Recycle
- Fill Out Shift Change Sheet
- Maintain high standard of area housekeeping
**Help In Following Area: MTS Bag Lines, Box Lines, Staging, Bulk Loading, Pkg Field Tech duties**

This is GE Confidential Document. A Printed copy is UNCONTROLLED, current only for the date or the task it is printed and should not be copied.

## Operation Specialist Job Description

**Revision #: 1 Document ID: 27061 Old System number: NEW**

**Job Overview**

The Operation Specialist will be responsible for the leading and planning of activities for the operation to assure continuous safety and quality improvement. This individual is also responsible for developing programs to achieve maximum productivity from existing equipment and resources, and act as a liaison to the engineering group for process modifications and capacity expansions.

**Job Responsibilities**

Safety/Environmental:
- Oversee the timely completion of ~~Safety~~ Hazard Spotters/Concern Reports
- Initiate and track the approval of new material introduction to the ~~packaging~~ operation
- Enforce site safety and health policies and procedures
- Schedule yearly monitoring of noise and airborne hazards
- Oversee completion of major hazard review items
- Oversee the use of the ~~Process Modification~~ Request MOC System and maintain files for operation
- Routinely monitor housekeeping and provide feedback to the team leads
- Act as liaison to the environmental group and communicate any changes to permitted environmental control systems

Quality:
- Act as the quality system area representative for the operation
- Ensure all internal quality audits are completed in a timely manner
- Oversee the completion of all quality system non-conformance
- Oversee the completion of customer complaint feedback within 5 working days of receiving all the necessary information
- ~~Act as primary contact to material suppliers (pallets. Bulk packs, bulk pack liners, bulk pack lids, bands, bags, top sheets, stretch wrap, bulk powder liners, propane) and~~
- Utilize Supplier Corrective Action Notices to address quality issues
- Act as liaison for customer service, traffic, and Warehouse Services, Inc. to address on-time delivery issues associated with transfer-to-Finished-Goods documentation/ communication issues, and shipping container availability
- Monitor operation internal reject trends and oversee corrective actions

Productivity:
- ~~Monitor and control inventories for pallets, bulk packs, bulk pack lids, bulk pack liners, bands, bags, top sheets, stretch wrap, and bulk powder liners~~
- Coordinate shutdown projects
- Monitor operation performance on equipment turnaround and line down time, and provide coaching and direction to the team leads
- Provide guidance to engineering, maintenance, and outside contractors for the completion of operational projects that affect plant reliability

General:
- Act as mentor and coach to team leads and manager by providing guidance regarding



EXHIBIT "B"

their personal performance, performance of their subordinates, operational performance
- Act as a liaison to engineering group for process modifications and capacity expansions

This is GE Confidential Document. A Printed copy is UNCONTROLLED, current only for the date or the task it is printed and should not be copied.

# Finishing Manager Job Description

**Revision #: 1 Document ID: 15893 Old System number: N/A**

**Job Overview**
The Finishing Manager is responsible for directing the activities of the finishing operation to drive continuous improvement in the areas of safety/environmental, quality, and productivity in a cost effective manner. Responsibilities also include the overseeing of employee development and training in the operation, and interfacing with engineering, customer service, traffic, and the Lexan Business Team to provide guidance for new product introduction and capacity expansions.

**Job Responsibilities**
**Safety/ Environmental:**

- Establish safety goals for the operation and oversee their completion
- Enforce site safety and health policies and procedures (both recognition and discipline)
- Drive the use of the process modification request system
- Ensure safety inspections are completed in a timely manner, and outstanding items are resolved
- Ensure that initial accident investigations are completed by investigation is completed within two  working days
- Provide coaching/counseling to leadership group on safety performance
- Inspect operation housekeeping on a routine basis
- Encourage first aid visits
- Communicate accident information to other operations
- Ensure contractors receive operations safety orientation
- Provide adequate time for TRT and Ambulance Training
- Ensure proper back-up ECC training occurs
- Review safety performance and trends in monthly meetings
- Ensure proper preparations have been completed when approving confined space entry permits
- Review all Safety Spotters for the operation

**Quality:**

- Establish quality goals for the operation and drive their completion
- Complete quarterly reviews of operation quality system and its performance
- Ensure product non-conformance detail reports are completed for all product con-conformances, and that effective corrective actions are completed
- Review all internal quality audit findings
- Review all customer complaint responses and communicate trends
- Review product non-conformance trends in monthly meetings
- Oversee the correction of on-time delivery issues in the operation

**Productivity:**

- Establish productivity goals for the operation and oversee their completion
- Prepare yearly budget and track performance against this budget
- Drive programs to improve equipment reliability, line utilization, and line turnaround to support site production plan goals

EXHIBIT "C"

- **Interface with business packaging team to coordinate changes in packaging systems in the business**

General:
- **Establish training goals for the operation and oversee their completion**
- **Review all operator appraisals, and write team lead and operation specialist appraisals**
- **Utilize recognition an discipline systems to address behavioral issues in the operation**
- **Enforce company policies and practices**
- **Interface with engineering, customer service, traffic and the Lexan Business Team to provide guidance for the new product introduction and capacity expansions**

This is GE Confidential Document. A Printed copy is UNCONTROLLED, current only for the date or the task it is printed and should not be copied.

# Management's Committment To Safety Policy

**Revision #: 3 Document ID: 20346 Old System number: GS2.01**

EXHIBIT "D-1"

| Originator | Approver | Approval Date | Review Date |
|---|---|---|---|
| Wendell Landis | Site Safety Comm. | 4/02 | 4/04 |
| | | | 4/06 |
| | | | Next due 2/09 |
| | | | |

## CHANGE INDEX

| Change Number | Change Date | Originator | Approver |
|---|---|---|---|
| 1 | | Dan Grucza | Joe Castrale |
| 2 | April 2004 | Wendell Landis | John Washuta |
| 3 | May 2006 | Wendell Landis | Tracy Scott |
| 4 | Feb 2007 | Bob Gates | Tom Tsekouras |

## CHANGE LOG

| Change Number | Change Description |
|---|---|
| 1 | Revised Review Date to reflect recommendation of H&S Framework assessment. Recommended a two-year review cycle. Changed review date from 12/04 to 4/02. The next review for this procedure will be on 4/04. |
| 2 | Revised with current Site Manager. (John Washuta) |
| 3 | Revised with current Site Manager. (Tracy Scott) |
| 4 | Revised with current Site Manager. (Tom Tsekouras) |
| | |
| | |
| | |

**SAFETY POLICY OF THE
MANUFACTUIRNG OPERATION
GENERAL ELECTRIC COMPANY
BURKVILLE, ALABAMA**

It is the objective of the General Electric Company to manage its plants and activities so that employees health and safety on the job are protected from unreasonable risks, so that employees' reasonable expectations concerning the work environment are met, and so that the environment is properly protected from adverse effects on plant operation or from use of Company products or services.

General Electric Company will take all appropriate measures to protect the health and safety of its employees in the performance of their assigned work, giving full regard to evolving industry practices,

regulatory requirements, and societal standards of care; and, to eliminate, where possible or limit to lowe
practicable levels, adverse effects on human health and the environment from its products, services faciliti
and activities.

As a part of the corporate Health and Safety Policy, the Burkville site has developed procedures to tra
employees in the safe performance of their assigned tasks and the proper use of safety equipment. Eve
employee is required to comply with the Burkville site and regulatory, safety, industrial hygiene ar
environmental requirements, procedures and practices. The managers of the various operations and/
departments have overall responsibility and authority for assuring that the practices and programs f
employee health and safety and for environmental protection are effectively implemented in their respectiv
areas.

Safe work performance is required from each employee and the proper discharge of safety responsibilities
an integral part of each employee's performance appraisal. Failure to observe proper safety, industri
hygiene and environmental requirements, procedures and practices, may result in disciplinary actions, up t
and including discharge.

Every employee on the Burkville site is a member of a team whose prime objective is to make this facility
model of safety and efficiency in the Engineering Plastics Industry.

_____
Site General Manager

---

**This is GE Confidential Document. A Printed copy is UNCONTROLLED, current only for
the date or the task it is printed and should not be copied.**

# Responsibility For Safety

## Revision #: 4 Document ID: 20577 Old System number: GS2.02a

### REVIEW LOG

| Originator | Approver | Approval Date | Review Date |
|---|---|---|---|
| W. Landis | D. Grucza | 8/01 | 8/03 |
| | | Bi-annual – due 8/05 | |
| | | Reviewed 8/05, next review 8/07 | |
| | | | |

### CHANGE INDEX

| Change Number | Change Date | Originator | Approver |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

### CHANGE LOG

| Change Number | Change Description |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**Responsibility for Safety – Burkville GEP**

EXHIBIT "D-2"

This instruction is to serve as a basic guideline and overview of what role everyone at Burkville is to play in the safety program.

## Management
A. Overall responsibility for the safety of all personnel within their area of jurisdiction.
B. To train and educate all of their supervisory personnel in the discharge of their safety program responsibilities and evaluate their effectiveness in doing so.
C. To assure that adequate provisions are made to handle accident, fire, and other emergency conditions that occur in their areas.
D. To participate personally in all safety program activities.
E. Enforce all site and departmental safety instructions, rules, and procedures.
F. Conduct regular safety and information meetings for all of their employees.

## Engineers/Lead Technicians
A. Direct responsibility for the maintenance of the safety program in their area.
B. Train and educate newly hired, transferred, and present employees in the proper work practices and procedures; take a strong position in regard to any violation of safety rules and procedures.
C. Determine the need for and enforce the use of safety procedures.
D. Inspect the department and/or area regularly for unsafe acts or conditions and take immediate corrective action upon any item found.
E. Participate in safety and health activities and inspections.
F. Advise other supervisors concerned with repair work hazards with their respective department and area.
G. Arrange for and/or conduct needed tests on tanks or vessels for flammable gases, toxic atmospheres, etc.
H. Investigate thoroughly all incidents involving personal injury and/or property damage and prepare complete reports.
I. Cooperate with the safety department in improving the effectiveness of the safety program in their area.
J. Maintain good housekeeping in the area.
K. Cooperate with personnel responsible for fire prevention/protection in planning for drills, fire prevention inspections, and assist at fires or other emergencies, as requested.

## All Employees
A. Follow all site and department safety rules, procedures, and instructions.
B. Correct unsafe conditions within their area and report those conditions that they cannot correct to their supervisor immediately.
C. Fully understand their work assignments before beginning and to seek appropriate help when questions arise or necessary action to take is unclear. (The only dumb questions are those that are no asked.)
D. Participate in emergency response teams, safety committees, inspection teams, etc. as requested. (These activities are essential for protecting lives and jobs.)
E. Maintain a safe and clean work area.
F. Take proper care of all tools and equipment assigned for use.
G. Report to their immediate supervisor all injuries and illnesses that arise from or affect their work assignments when they occur.

This is GE Confidential Document. A Printed copy is UNCONTROLLED, current only for the date or the task it is printed and should not be copied.

EXHIBIT "D-2"



inside
GE Industrial
Plastics

**WORLDWIDE PARTNER**

▸ SEARCH

Integrity|ၐ|Site Index|ၐ|Help
↑ 38.15  +0.08

# Who's Who in Burkville EHS

**Tom Tsekouras**
Site General Manager

**Deborah Downey**
**EHS Manager**

**Faye Blackburn**
EHS Admin

## Environmental

### Health

### Safety / Security

### PSM

**Fritz Howes**
Env Engineer

**Dr. McDowell**
Medical Director

**Mickey Cothran**
EHS Specialist
TRT/ DOT

**Eddie Laporte**
PSM Leader

**Bob Gates**
Engineering Tech
Blackbelt
Digitization
CSB

**Teresa McDowell**
RN Practioner

**Keith Shirley**
EHS Specialist
Contractor Safety
Resin/Brine

**Todd Jackson**
PSM Engineer

## Waste Handling

**Ronnie Banks**
EHS Specialist
IH
Utilities/WHO

**Jeff Beeson**
PSM Specialist

**Steve Armstead**
WHO Ops
Specialist

**Nancy Parker**
**Jerry Shelby**

**Vic Swift**
EHS Specialist
Compliance Assurance
Finishing/BPA

**Mike Stockman**
M&I Specialist

**Don Duncan**
**Mike Crawford**

**Phillip Bye**
EDMS
Administrator

EXHIBIT "*E*"

Building Coordinator Job Description

# Building Coordinator Job Description

**Revision #: 1 Document ID: 27062 Old System number: NEW**
**Job Overview**
The Building Coordinator is responsible for training and shift supervision of the "unit" operation personnel to meet established safety, housekeeping, environmental, and quality standards. Duties will include performance evaluations, coordinating maintenance activities to ensure "unit" reliability, technician guidance and training. Training responsibilities will include the periodic assignment to day shift to work as training coordinator and special policies, and procedures.

**Job Responsibilities**
**Quality:**
- ~~ISO~~ Quality Systems Implementor
- Product Non Conformance Implementor
- Monitor Bulk Powder Container Weights
- Monitor PWRS
- Monitor Bag Dump And Recycle Numbers
- Monitor Control Plan/LHP Usage

**Productivity**
- ~~Schedule~~ Vacations – Resolve Coverage Issues
- Schedule Training Time
- Coordinate Maintenance Work
- Troubleshoot Equipment Failures
- Monitor Bulk Pellet Tanker Loading Schedule
- Coordinate railcar utilization with M&L
- Communicate railcar movement with railcrew
- Write work permits and perform LOTO's for contract personnel and GE maintenance
- Complete and distribute HOTWIP bills to truck drivers on offshifts and weekends
- Address Special Project Needs
- Interface With WSI Warehouse
- Communicate With Truck Spotters
- Work With Op Specialists & Engineering on Projects

**General:**
- Complete appropriate Concern Reports for incidents occurred on shift
- Monitor completion of monthly housekeeping inspections and monthly safety equipment inspections
- Monitor completion of monthly JSA's in Extrusion and Packaging
- ~~Monitor System~~
- Motivate Operators
- Write Appraisals, Deliver Feedback
- Keep Accurate Notes
- Understand DCS Programs & Troubleshoot
- ~~Order Production Supplies~~
- Administer Positive Discipline
- Fill Out Daily Shift Status Sheet
- Maintain High Standard of Housekeeping
- Communicate With Truck Spotters

EXHIBIT "F"

This is GE Confidential Document. A Printed copy is UNCONTROLLED, current only for the date or the task it is printed and should not be copied.

# PREVENTATIVE MAINTENANCE (PM) PROGRAM POLICY 11.04

**Revision #: 1 Document ID: 946 Old System number: NA**

| SUBJECT | Preventative Maintenance (PM) Program | Policy 11.04 |
|---------|----------------------------------------|--------------|

## PURPOSE

The purpose of this policy is to outline the Site Preventative Maintenance (PM) Program, in an overview to state the objectives and describe the methods to be used to assure compliance with OSHA 29 CFR 1910.119. It is the intent of the GE Plastics, Burkville team, to meet or exceed all the requirements of compliance with the Mechanical Integrity assurance program.

## SCOPE

This policy is used to provide a means of describing Burkville's Preventative Maintenance (PM) Program. The objective of which is to service, inspect, and maintain equipment on a regular schedule to ensure reliability and prevent failures.

## EXCEPTIONS

None

## REFERENCES

None

## PROCEDURE

GE Plastics, Burkville, uses a Computerized Maintenance Management System (CMMS) which schedules and generates preventative maintenance (PM) work orders automatically by predetermined frequencies or cycles.

PM cycles/intervals are determined by the number of weeks between PM task/s.

Contents of PM Work Order:

Work Order Number
Equipment Asset Identification number
System and Location of Equipment
Craft Required to Perform PM
Frequency of PM
Priority Code (period/timeframe to complete)
Estimated Time (manhours) needed to Complete PM
Specific instructions/steps to perform the task (including tools/equipment required and safety precautions)
Field to record Actual Time Spent to Complete PM
Field to record Completion Date

EXHIBIT "G"

# Freight Elevator Monthly Inspection Worksheet

**Location:**

**Inspected By:**

**Date:** ___ / ___ / ___

Please circle "Yes" or "No" in the appropriate box for each item you inspect. If you mark any item "No", you will need to report actions taken to remedy the problem in the comment section. (Examples: Contacting elevator service vender, entering a workorder [list number] and/or actions taken by Operations.)

*Please Watch For Other Safety Or Production Issues While You Are Completing This Worksheet!*

| Inspection Items | Inspected Item Is Clean and In Good Working Order. | Comments | Workorder # |
|---|---|---|---|
| Strobe Light Flashes As Safety Gate & Doors Close | Yes * No | | |
| Buzzer Sounds As Safety Gate & Doors Close | Yes * No | | |
| "Safety Edge" Contacting An Object Reopens Doors | Yes * No | | |
| Manual "STOP" Button (Prevents Closure of Gate/Doors) | Yes * No | | |
| Control Buttons (Include Lighting Up When Activated) | Yes * No | | |
| Elevator Car Telephone  (Make A Call For Verification) | Yes * No | | |
| Elevator Car Lighting | Yes * No | | |
| Elevator Car Walking Surface | Yes * No | | |
| Walking Surfaces Of Elevator Car & Floor Are Level | Yes * No | | |
| | | | |
| | | | |

**Investigation Report**

Incident Location:  Finishing Bldg – Roof at Freight Elevator

Report Date:  7/7/05

Incident Date/Time:  6.13.2005 16:38

Investigation Started:  6.13.2005 17:05

Chemical Released: NONE

Atmospheric conditions:  Sunny; Approx. 94 F; Clean Dry Surface at roof level

Incident Level (GEP Level A-D):  C    (Lost Time Accident – LTA)

Investigation Team Members / Function or Title:  Note-Team Leader must be GEP incident investigation trained.

| Wendell Landis – Co-Leader | Vic Swift – Co-Leader | Mike Evans – Engineer |
|---|---|---|
| Tommy Kilpatrick – Mgr. Dele | Mark Wyatt – Op Specialist | George Vinson – Op Specialist |
| Curt Williamson – 1st Responder | Tyson Cook – 1st Responder | Don Macon – Bldg. Coordinator |
| Scot Aler – EHS Manager | Nate Provost – Engineer | |

Personnel Exposed:
        No personnel were exposed to chemicals.  David Buxton was the individual injured.

Incident Description:
        At approximately 16:38 on 6.13.2005 a call over Plant 4 radio was received (to Mark Smith) that an operator was down on the roof.  The call was overheard by TRT personnel in the Color Control area (Curt Williamson and Tyson Cook) and they responded.  When they arrived on scene the first responders found the operator lying on the concrete floor outside the elevator.  The operator told responders that while entering the elevator he was struck in the head by the door ~~████████████████████████~~.  The operator told responders that he felt as if he was getting crushed and as he tried to move out of the way of the door he felt a sharp pain in his knee.
        While first responders were arriving on scene the operator whom received the initial call from the down operator made radio contact with the ECC.  The ECC notified appropriate personnel and the CARE Ambulance service responded.  According to first responders the CARE service ~~████████~~ within approximately ~~████████~~ from initial contact with the individual.
        Upon arrival on scene the first responders found the operator lying on the floor outside of the elevator doors.  The first responders found the doors to the elevator open.  Plant personnel evaluated the freight elevator and decided to use the involved elevator to transport ambulance personnel upstairs and then to transport the injured employee back downstairs.  CARE service stabilized the individual and transported to Jackson Hospital in Montgomery, AL.    Later employee was evaluated by an Orthopedic surgeon and surgery was performed on June 17, 2005.

Contributing Causes:
* During re-enactment, safety edge (inner safety gate) did not function properly due to loose wire.
* There was no routine PM or inspection on this elevator safety device (safety edge).

Release Scenarios:

EXHIBIT "I"

| SHORT TERM ACTIONS | OWNER | DUE DATE | STATUS / COMPLETION DATE |
|---|---|---|---|
| Repair of safety vacuum strip on gate | George Vinson | 6/26/05 | Completed 6.14.2005 |
| Gather and review list of performed maintenance from Thyssen-Krupp | George Vinson / Investigation Team | 6/26/05 | Completed 6.14.2005 |
| Communicate to building personnel never to enter elevator while buzzer is sounding or warning light blinking to indicate door closure | Mike Evans | 6/26/05 | Completed 6.14.2005 |
| Communication to site personnel re: elevator safety | Wendell Landis | 6/26/2005 | Completed 6.15.2005 |

List Long-term Actions as needed:

| LONG TERM ACTIONS | OWNER | DUE DATE | STATUS / COMPLETION DATE |
|---|---|---|---|
| 1. Develop site standardization of required safety devices for freight elevators and load document in Qualtrax. | Vic Swift | 8/15/2005 | Done |
| 1a. Investigate upgraded safety trigger to retract the gate | Mike Evans | 8/15/2005 | upgrade light electric Open |
| 1b. Install upgraded warning systems buzzer and light – ensure light is visible | George Vinson | 8/15/2005 | Open |
| 2. Install upgrades needed to meet standard for site freight elevators. | Elevator owners | 9/15/05 | site wide Open |
| 3. Develop PMs in EMPAC for freight elevator safety devices, functional testing, no load test, and load test. | Maintenance Planners | 9/1/05 | Tracking PM Open |
| 3a. Obtain copy of functional testing, no load test, and load test for all freight elevators on site. | George Vinson | 8/1/05 | |
| 4. Develop refresher training to cover safe freight elevator operation. | George Vinson | 9/15/05 | S.O.P Qual TRAX NEED TEST |

ATS System

- pushed call button "normal"
- looked at floor level of car after doors opened
- entered elevator
- big brown doors closed on head of employee
- employee fell down
- elevator door moving upward picked up leg of employee
- safety gate closed on knee of employee

Based on this timeline from injured employee, reviewed possible scenarios with Thyssen Krupp personnel.   A micro roller limit switch failure in the elevator car was simulated.  The exterior brown doors do close first before the safety gate descends.  The exterior doors close very slowly in this mode and the safety gate will only descend half way toward the floor of the car.  Could there be a "door close" push button stuck and a micro switch failure? Thyssen Krupp to contact the manufacture of the elevator – Peelle.  If the micro switch failed, then the elevator will not function.

Update Note on 7/7/05 by Wendell Landis
George Vinson talked with Thyssen Krupp personnel that had contacted Peelle manufacturer.  Peelle was not aware of this type of failure (exterior doors closing quickly due to stuck button, etc) and had not been able to re-enact this type of failure at their facility.

**Buxton, David A (GE Advanced Materials)**

| | |
|---|---|
| **From:** | Gates, Bob (GE Advanced Materials) |
| **To:** | @GEP BUR FIN SHIFT EMPLOYEES (GEP); @GEP BUR FIN DAY EMPLOYEES (GEP); @GEP BUR FIN MAINT EMPLOYEES (GEP) |
| **Cc:** | |
| **Subject:** | FW: 14143: Concern Report Logged for Lexan / Burkville AL US |
| **Attachments:** | |

---

**From:** EHS Web, GEAM (GE Advanced Materials, consultant)
**Sent:** Tuesday, June 14, 2005 6:54:19 PM
**To:** Spear, John (GE Advanced Materials)
**Cc:** Gates, Bob (GE Advanced Materials);
Banks, Craig (GE Advanced Materials);
Williams, Emmett (GE Advanced Materials);
Sheedy, Jason M (GE Advanced Materials);
Beeson, Jeff (GE Advanced Materials);
Shirley, Keith (GE Advanced Materials);
Cothran, Mickey (GE Advanced Materials);
Stockman, Mike (GE Advanced Materials); Ray, Pam (GE Advanced Materials);
Sewell, Peggy (GE Advanced Materials);
Banks, Ronnie (GE Advanced Materials);
Aler, Scot F (GE Advanced Materials);
Gaylor, Teresa (GE Advanced Materials);
Swift, Victor (GE Advanced Materials);
Landis, Wendell (GE Advanced Materials);
Chisholm, Harry L (GE Advanced Materials)
**Subject:** 14143: Concern Report Logged for Lexan / Burkville AL US
**Auto forwarded by a Rule**

**EXHIBIT "J"**



Report Summary

EHS Concern Reporting

Burkville AL US / Lexan

Page 2 of 3

**A New Concern Report** has been submitted. Please review the information below regarding this report.

| | |
|---|---|
| Date: | 6/14/2005 |
| Unit: | Resin |
| Type: | Safety Concern |
| Time: | 05:43 PM |
| Shift: | |
| Observer(s): | John Rodgers |
| Core Activity: | NA |
| At risk behavior/Condition: | |
| Description: | During safety evaluation of the east and west freight elevators (push button functions, strobe light, buzzer, and safety gate), determined that the safety gate "safety edge" did not function on either elevator. Contacted Team Lead to have Dover (Thyssen Krupp) Elevator come to the site this evening to evaluate / repair. Allowed Team Lead to have 2 person operation to move THPE up the freight elevator - 1 person always at push button since this button does work properly to raise safety gate. Placed signs on elevators to not use otherwise until Dover evaluates. |
| Immediate/Direct Cause: | Safety gate "safety edge" not wired at all on the south side of the West elevator. Note: in Finishing plant incident yesterday, wiring was loose as to edge not functioning. Note: East elevator gate and wiring is relatively new. |
| Recommendations for Follow-up: | Repair installed "safety edges" on both elevators. Investigate better technology for the safety edge gate function in this harsh environment. |
| Contact Information: | Wendell Landis |
| Status: | **Open** |
| Assigned To: | John Spear |
| Closure Due Date: | 06/17/2005 |
| External System: | NA |
| External System ID: | NA |
| Closed Date: | NA |
| Closure Comment: | NA |

Multiple CC:

**View this Report**

NA