IN THE DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID A. BUXTON and ANNETTE BUXTON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 2:07-CV-484 |
| ) | |
| MARK WYATT, et al. ) | |
| ) | |
| Defendants. ) | |

### RESPONSE TO MOTION TO REMAND AND MOTION FOR ATTORNEY FEES

Defendant **Thyssenkrupp Elevator Corporation** responds to the Plaintiff's Motion for Remand and Motion for Attorney Fees as follows:

### RESPONSE TO PLAINTIFF'S MOTION TO REMAND

In their Motion to Remand, Plaintiffs argue that this case should be remanded to the Circuit Court of Lowndes County because the individual co-employee defendants have not been fraudulent joined. In its Notice of Removal, Thyssenkrupp also established that the amount-in-controversy requirement is met in this case. Plaintiffs have not challenged the amount-in-controversy requirement, and, accordingly, the Motion to Remand and this response address only the fraudulent joinder issue.[1]

---

[1] Regarding the citizenship of the co-employees, Plaintiffs state in Paragraph 5 of their Motion to Remand that the co-employees do not dispute that they are residents of Alabama, citing Paragraph 16 of Thyssenkrupp's Notice of Removal to support this assertion. However, Paragraph 16 of the Notice of Removal actually states that the co-employees are *alleged* to be residents of Alabama but that, because they have been fraudulent joined, their citizenship should be disregarded. Thyssenkrupp's Notice of Removal does not contain a concession by Thyssenkrupp or the co-employees that all co-employees are residents of Alabama. In fact,

As explained below, the Plaintiffs' Motion to Remand and attached evidentiary materials show that the Plaintiffs cannot establish a claim against the co-employee defendants. The motion and attached exhibits fail to support the allegations that the co-employees had any responsibility for the maintenance and inspection of the subject elevator, that the co-employees were aware of a problem with the elevator before David Buxton's accident, that the co-employees willfully or intentionally failed to repair the elevator, or that the co-employees knew to a substantial certainty that injury or death was likely if the elevator was not repaired.

At most, Plaintiffs have suggested that one or more of the co-employees *may* have been negligent. However, negligence or even wantonness is insufficient to state a claim against the co-employees outside the workers' compensation statute. See Grimes v. Stewart, 628 So. 2d 467, 468-69 (Ala. 1993).

**Standard of Review**

Plaintiffs are correct that, in addressing the issue of fraudulent joinder, a district court should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits or deposition transcripts. Cabalceta v. Standard Fruit Co., 883 F.2d 1553 (11th Cir. 1989). However, as shown below, the Plaintiffs' Motion to Remand and attached exhibits create neither a fact question nor a question of controlling law to be resolved in favor of the Plaintiffs, and Plaintiffs' Motion to Remand is due to be denied.

---

Wendell Landis is not a resident of Alabama and was not a resident at the time the Complaint was filed. However, because the remaining co-employees are residents of Alabama and diversity jurisdiction would be defeated if only one employee was a resident and properly joined, Thyssenkrupp did not address the citizenship of Mr. Landis in its Notice of Removal.

**A.     Co-Employee Liability Must be Based on Willful and Intentional Conduct**

It is well-settled, and Plaintiffs do not challenge, that controlling law in this case requires willful conduct by the co-employees in order for the Plaintiffs to proceed against the co-employees. ALA. CODE § 25-5-11(b). It was the "manifest intent of the Alabama Legislature that litigation among co-employees be restricted to those situations in which the plaintiff can show something more than what is usually sufficient to make out a case of negligence or wantonness"; thus, § 25-5-11 provides that a plaintiff can bring such an action only when he can demonstrate that the co-employee was guilty of "willful conduct." Grimes, 628 So. 2d at 468-69.

As explained in the Notice of Removal, willful conduct that will support a claim against a co-employee exists in four specific situations. Plaintiffs' Complaint and Motion to Remand make it clear that Plaintiffs are relying on only one of those four specific situations: willful and intentional removal from a machine a safety guard or safety device. See Pls.' Remand Mot. ¶¶ 31-37. Thus, the remaining three situations listed in ALA. CODE §25-11-(c)(1-4) are not at issue in this case.

To establish a prima facie case of willful and intentional removal of a safety guard or safety device from a machine under § 25-5-11(c)(2), a plaintiff must show: (1) the safety guard or device must have been provided by the manufacturer of the machine; (2) the safety guard or device must have been removed from the machine; (3) the removal of the safety guard or device must have occurred with knowledge that injury would probably or likely result from that removal; and (4) the removal of the safety guard or device must not have been part of a modification or an improvement

3

that rendered the safety guard or device unnecessary or ineffective. Harris v. Gill, 585 So. 2d 831, 835 (Ala. 1991). Further, with respect to the second element, removal of the safety device, the Alabama Supreme Court has held that "the failure to maintain and/or repair a safety guard or device provided by the manufacturer of a particular machine would be tantamount to the 'removal of' or the 'failure to install' a safety guard or device." Moore v. Reeves, 589 So. 2d 173, 178-79 (Ala. 1991).

Thyssenkrupp does not concede that the Plaintiffs can establish any of the elements of a prima face case, but is clear from the documents and materials submitted by the Plaintiffs that they cannot support the allegations of the second element above (that the co-employees failed to maintain or repair a safety guard or device) and that they have not even alleged the third element above (that the removal of the safety guard or device occurred with knowledge that injury would probably or likely result from that removal).

**B.     Plaintiffs' Cannot Support the Allegation that the Co-Employees Failed to Maintain or Repair a Safety Guard or Device**

The crux of co-employee liability is "knowledge or awareness of the co-employee of the necessity for maintenance or repair of the safety device in question." King v. Cape, 907 So. 2d 1066, 1073 (Ala. Civ. App. 2005). "To allow co-employee liability to be premised on §25-5-11(c)(2) when a co-employee had neither notice that the safety device was not working properly nor notice that the safety device required a specific type of maintenance to ensure that it would work properly more closely resembles a suit based on that co-employee's negligence rather than his or her willful and intentional

conduct." Id. at 1074-75. Ignorance about repairs or maintenance required for the building elevators where an employee works may be irresponsible or negligent, but it is not a sufficient basis for co-employee liability. Id. at 1075. "[R]equiring that a co-employee have knowledge of a need for maintenance or repair of a safety device before being held liable under § 25-5-11(c)(2) is consistent with the legislature's express intent in enacting § 25-5-11(c). The legislature's use of the words 'willful and intentional' before the word 'removal' in § 25-5-11(c)(2) was purposeful." Id. at 1074.

In support of the Motion to Remand, Plaintiff attaches an affidavit along with the job descriptions for the co-employees, documents evidencing a preventive maintenance program at GE Plastics, including a freight elevator monthly inspection worksheet, and documents and correspondence concerning GE's investigation of Plaintiff's accident. These documents have been submitted presumably to establish knowledge of the need for repair by the co-employees. However, none of these documents actually support the Plaintiffs' allegations and, to the contrary, show that the Plaintiff has no possibility of establishing a cause of action against the co-employees for willful and intentional removal of a safety device or safety guard.

**(1)   Job Descriptions Submitted by Plaintiffs**

According to the Plaintiffs, the job descriptions are meant to show that "it was the Co-Employee Defendants' responsibility to ensure that any malfunctioning safety devices on the Finishing Plant elevator were repaired and/or replaced to ensure safe operation of the Finishing Plant elevator." (Pls.' Remand Mot. ¶ 25.)   However, Plaintiffs fail to explain how the job descriptions support the allegations that the co-

5

employees knew the elevator needed repair and that it was the co-employees' responsibility to maintain and repair the elevator. Not one of the ten job descriptions mentions the word "elevator," and only four of them mention the word "safety." See Exhibits A (containing seven job descriptions), B, C, and F to Pls.' Remand Mot. A review of the four job descriptions that actually mention "safety" (the A&B Bag Line Operator job description from Exhibit A, plus Exhibits B, C, and F) reveals that the safety component of these jobs is in no way related to the building's elevators. Furthermore, the job descriptions submitted by the Plaintiffs list specific machines for which the employees are responsible and with which they should be familiar, but the freight elevator is not among the list of machines. None of the job descriptions requires a familiarity with the freight elevator or imposes maintenance and repair responsibilities for the freight elevator. They do not require the co-employees to inspect or maintain an elevator in any plant within the GE facility. In short, they do not support the Plaintiffs' allegation that the co-employees were responsible for ensuring that "any malfunctioning safety devices on the Finishing Plant elevator were repaired and/or replaced to ensure safe operation of the Finishing Plant elevator." (Pls.' Remand Mot. ¶ 25.)

Additionally, to the extent that Plaintiffs are attempting to impose liability on the co-employees because of their supervisory status, Alabama law holds that this is impermissible. The King case cited above holds that co-employees cannot be held liable merely by virtue of their positions of authority. King, 907 So. 2d at 1073. There is no

statute or common law rule in Alabama "that supervisors are automatically liable when a safety device is not maintained or repaired properly." Id.

In King, the plaintiff argued "that supervisory co-employees may be liable for their failure to maintain or repair a safety device merely by virtue of their positions of authority. That is, she argue[d] that a co-employee's knowledge or awareness of the necessity of repairing or maintaining a safety device is immaterial to his or her liability in a co-employee suit under § 25-5-11(c)(2)." Id. at 1073. In affirming summary judgment for the co-employees, the court explained that a plaintiff must show substantial evidence creating a genuine issue of material fact as to whether her co-employees "willfully and intentionally [failed to repair] the safety guard or device ... and did so with knowledge that injury would likely or probably result from [that failure]." Id. at 1073 (internal quotations omitted).

Thus, it is clear that supervisory authority by a co-employee is not enough. The King court explained that the central holding of Moore—the failure to maintain a safety device can in some circumstances be equated with willful removal under the statute—does not mean "that supervisors are automatically liable when a safety device is not maintained or repaired properly." Id. In fact, not only must a plaintiff offer evidence of this knowledge, the finding of co-employee liability "under § 25-5-11(c)(2) has indeed rested on the knowledge or awareness of the co-employee of the necessity for maintenance or repair of the safety device in question." Id. Because none of the job descriptions or other exhibits offered by the Plaintiffs show that the co-employees were responsible for the maintenance of the freight elevator safety devices or

7

that the co-employees had knowledge of the necessity for maintenance or repair, Plaintiffs apparently seek to base liability on the co-employees' supervisory positions. However, under King, the supervisory positions of the co-employees do not give rise to a valid cause of action against the co-employees for failure to maintain a safety device.

### (2)     Preventive Maintenance Documents Submitted by Plaintiffs

In addition to the job descriptions, the Plaintiffs' have attached documents concerning GE's preventative maintenance program, one of which is a Freight Elevator Monthly Inspection Worksheet. According to the Plaintiffs, like the job descriptions, the preventive maintenance documents are meant to show that the co-employees were responsible "to ensure that any malfunctioning safety devices on the Finishing Plant elevator were repaired and/or replaced to ensure safe operation of the Finishing Plant elevator." (Pls.' Remand Mot. ¶ 25.)   Plaintiffs apparently want the court to infer from these documents that GE Plastics had a preventive maintenance program at the time of David Buxton's accident that included monthly inspection of the freight elevator. However, Plaintiffs' have been misinformed about the Freight Elevator Monthly Inspection Worksheet, as it did not exist until after Mr. Buxton's injury and, in fact, was created in response to Mr. Buxton's accident. See Affidavit of George Vinson attached as Exhibit 1 to Co-Employee Defendants' Replay to Plaintiffs' Response to Motion to Dismiss.   Thus, neither the preventive maintenance documents nor the elevator inspection worksheet show that the co-employees had a duty to inspect or repair the freight elevator before Mr. Buxton's accident, that they knew the elevator needed to be

8

inspected or repaired before the accident, or that that they failed to perform required inspections or repairs.

### (3) Post-Accident Documents Submitted by Plaintiffs

Plaintiffs also rely on the post-accident investigation report and post-accident emails in an effort to establish knowledge by the co-employees that the freight elevator needed repairs. According to the Plaintiffs, the investigation report emails are meant to "show that the safety devices on the Finishing Plant elevator were not functioning and were in need of repair and/or replacement." (Pls.' Mot. ¶ 26.) However, an allegation that the elevator safety devices were not functioning and needed repair does not satisfy the Plaintiffs' requirement of showing that the co-employees had knowledge of the need for the repair. Also, the Plaintiffs' reliance on the Investigation Report and the GE Concern Report is surprising since both documents were clearly generated after Mr. Buxton's accident and contain information learned after the accident; thus, they cannot support an allegation that the co-employees had knowledge of the need for repairs before Mr. Buxton's accident.

### (4) Affidavit of David Buxton Submitted by Plaintiffs

Besides the materials discussed in Paragraphs (1) through (3) above, none of which shows that the co-employees had responsibility for the maintenance or repair of the freight elevator and none of which shows knowledge by the co-employees of the need for maintenance or repairs, the only other evidence Plaintiffs have submitted in support of their Motion to Remand are unsupported allegations in David Buxton's affidavit concerning the co-employees' knowledge of the need for repair.

9

For example, Paragraph 20 of Mr. Buxton's Affidavit asserts that "The Co-Employee Defendants knew that the Finishing Plant elevator's safety devices – the safety gate/safety edge – were not functioning properly prior to my injury as a result of the malfunctioning safety devices on June 13, 2005." Paragraph 23 of the affidavit asserts that the co-employees "allowed a known safety hazard to exist in that they knew the wiring or safety gate/safety edge of the Finishing Plant elevator was defective." Paragraph 24 of the affidavit asserts the co-employees "knew that the safety devices on the Finishing Plant elevator were susceptible to malfunctioning because of the harsh environment at the GE Plastics facility." Finally, Paragraph 25 of the affidavit asserts that the co-employees knew that routine preventive maintenance or inspections were required in order to prevent malfunctions…." All of these paragraphs from David Buxton's affidavit state or imply that the co-employees had knowledge <u>before</u> David Buxton's accident that the safety devices on the subject elevator were not working, that they needed repairs, and that, with this knowledge, the co-employees failed to make the repairs, but nothing the Plaintiffs submitted supports these allegations.

Thus, none of the materials submitted by Plaintiffs support the allegations that the co-employees had any responsibility for the maintenance and repair of the elevator or that they had knowledge of the need for repair. In fact, all of the materials can be reconciled with the co-employee affidavits submitted by Thyssenkrupp in its Notice of Removal without creating any factual dispute. <u>See</u> Exhibit C to Notice of Removal. Specifically, the co-employee affidavits establish generally that none of the co-employees had a duty to inspect, repair, or maintain the elevator's safety devices and

that none of the co-employees had knowledge of any problems with the elevators before Mr. Buxton's accident. See Co-Employee Defendants' Affidavits, attached as Exhibit C to Notice of Removal. None of the documents submitted by the Plaintiff actually contradict these assertions, and, in fact, only the unsupported allegations in Plaintiff's affidavit (see ¶¶23-25 of David Buxton's affidavit) and the unfounded conclusions that Plaintiffs draw from their documents are in contradiction to the co-employee affidavits.

C.  **Plaintiffs Have Failed to Allege That the Co-Employees Acted with Knowledge that Injury Would Likely Occur**

As mentioned above, one of the elements of Plaintiffs' claims against the co-employee Defendants is that the removal of the safety guard or device must have occurred with knowledge that injury would probably or likely result from that removal. Harris v. Gill, 585 So. 2d 831, 835 (Ala. 1991). This is an essential element of Plaintiffs' claim against the co-employees, and Plaintiff cannot establish a cause of action against the co-employees without proving this element. Reed v. Brunson, 527 So. 2d 102, 120 (Ala. 1988) (stating "we believe the legislature sought to [e]nsure that these kinds of cases would not be submitted to the jury without at least some evidence tending to show… that a reasonable man in the position of the defendant would have known that a particular result (i.e., injury or death) was substantially certain to follow from his actions"); Ex parte Newton, 895 So.2d 851, 855 (Ala. 2004) (affirming summary judgment for defendant where plaintiff failed to show the defendants' substantial certainty of injury but instead offered evidence only that previous employee had

11

suffered same injury while operating same machine). Despite the fact that Plaintiffs must show that the co-employees acted with knowledge that injury or death would probably occur, Plaintiffs do not even make this allegation in their Complaint, the Motion to Remand, or the exhibits to the Motion to Remand. Without alleging and supporting this allegation, there is no possibility that the Plaintiffs can establish a cause of action against the co-employees for failure to maintain and inspect the safety devices on the subject elevator. Accordingly, Plaintiffs' Motion to Remand is due to be denied.

## Conclusion

A party has been fraudulently joined when there is no possibility that the plaintiff can establish a cause of action against that party. Cabalceta v. Standard Fruitt Co., 883 F.2d 1553, 1561 (11th Cir. 1989); see also Tapscott, 77 F.3d at 1360 n. 17 and Triggs v. John Crump Toyota, 154 F.3d 1284, 1287 (11th Cir. 1998). The Plaintiffs' Complaint, the Motion to Remand, and the exhibits to the Motion to Remand clearly show that Plaintiffs cannot establish a cause of action against the co-employees for willful and intentional failure to inspect, maintain, or repair a safety device.

The Plaintiffs have failed to support their allegations that the co-employees had any responsibility for maintenance or repair of the elevators or that the co-employees knew that the elevator needed to be repaired. Plaintiffs have altogether failed to allege that the co-employees failed to maintain or repair the elevator with knowledge that injury would likely occur, and none of the documents Plaintiffs have submitted would support such an allegation anyway. Thus, neither the Complaint nor the materials

submitted in support of Plaintiffs' Motion to Remand show that Plaintiffs can establish a cause of action against the co-employees.

The job descriptions reveal only that some of the named co-employees had general, overall safety duties and that none of the co-employees had responsibility for maintenance or repair of the elevator. The preventive maintenance documents, when read in conjunction with George Vinson's affidavit submitted by the co-employees to support their Motion to Dismiss, show only that a freight elevator inspection was implemented after Plaintiff David Buxton's accident. Likewise, the post-accident materials submitted by the Plaintiffs show only that the co-employees became aware of a problem with the elevator after Mr. Buxton's accident. Finally, assertions in Mr. Buxton's affidavit regarding the knowledge of the co-employees are unfounded and completely unsupported by the materials submitted by the Plaintiffs.

In summary, there are no questions of controlling law or fact that need to be resolved in favor of the Plaintiffs in this case. Plaintiffs have no possibility of establishing a cause of action against co-employees who had no responsibility for the maintenance and repair of the elevators, had no knowledge of the need for repair, and who had no knowledge that injury would likely result from the needed repair.

For the above reasons, Plaintiffs' Motion to Remand is due to be denied.

## RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

Plaintiffs' Motion for Attorney Fees should also be denied. Plaintiffs assert that attorney fees should be awarded because a review of the documents submitted by the

Plaintiffs would have shown that the Plaintiffs' allegations stated a valid cause of action against the Co-Employee Defendants and because the co-employees' affidavits submitted by Thyssenkrupp in its Notice of Removal "are in fact in conflict with their job descriptions and the G.E. Plastics policies and procedures concerning safety." This is simply not the case.

Thyssenkrupp has demonstrated in detail above how the affidavit and the attached exhibits fail to support Plaintiffs' allegations and how they actually support the conclusions that the co-employees had no responsibility for maintaining, inspecting, or repairing the elevator before David Buxton's injury and that the co-employees had no knowledge of the elevator's need for repair before Mr. Buxton's accident. Furthermore, the co-employees' affidavits submitted by Thyssenkrupp are not "in fact in conflict with their job descriptions and the G.E. Plastics policies and procedures concerning safety." As explained above, the job descriptions do not mention the word "elevator," and, for the few that mention "safety," it is not in relation to the elevators. The preventive maintenance documents do not show that any co-employee had responsibility for the safety of the elevators in the building; they show only that GE had a preventive maintenance program and that freight elevator inspections were a part of that program at some time. The affidavit of George Vinson submitted with the co-employees' Reply to the Response to the Motion to Dismiss establishes that the freight elevator inspections were implemented after David Buxton's accident.

Thus, because a review of the documents submitted by the Plaintiffs' do not show that the Plaintiffs' allegations stated a valid cause of action against the co-

14

employees for willful and intentional removal of a safety device, which necessarily requires knowledge before the accident of the need for repairs <u>and</u> knowledge that the failure to maintain or inspect the safety devices would likely result in injury (which was not even alleged), and further because the co-employees' affidavits are not in conflict with the job descriptions or preventive maintenance documents submitted by Plaintiffs, the Plaintiffs are not entitled to attorney fees from Thyssenkrupp. Plaintiffs' Motion for Attorney Fees should be denied.

                                                  Respectfully submitted,

                                                  <u>s/ Angela R. Rogers</u>
                                                  Charles A. Stewart III (ASB-4955-a56c)
                                                  Angela R. Rogers (ASB-0853-e60r)
                                                  **Bradley Arant Rose & White LLP**
                                                  The Alabama Center for Commerce
                                                  401 Adams Avenue, Suite 780
                                                  Montgomery, AL 36104
                                                  Telephone: (334) 956-7700
                                                  Facsimile: (334) 956-7701

                                                  **Attorneys for Thyssenkrupp Elevator Corporation**

<u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on July 9, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

   James B. McNeil, Jr.
   HOBBS & HAIN, P.C.
   P. O. Drawer 1190
   Selma, AL  36702-1190

   Jere F. White, Jr.
   Lee M. Hollis
   Hyde Carby
   LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
   The Clark Building
   400 North 20th Street
   Birmingham, Alabama  35203-3200

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:  None.

            s/ Angela R. Rogers
            Angela R. Rogers (ASB-0853-e60r)
            Bradley Arant Rose & White LLP
            The Alabama Center for Commerce
            401 Adams Avenue, Suite 780
            Montgomery, AL 36104
            Telephone: (334) 956-7700
            Facsimile: (334) 956-7701
            Email: arogers@bradleyarant.com